```
                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA


    United States of America,       ) Criminal Action
                                     ) No. 21-cr-57
                 Plaintiff,          )
                                     ) STATUS CONFERENCE
    vs.                              )
                                     ) Washington, DC
    Nicholas Rodean,                 ) January 24, 2022
                                     ) Time:  10:00 a.m.
                 Defendant.          )
    _____

              TRANSCRIPT OF STATUS CONFERENCE
                      HELD BEFORE
          THE HONORABLE JUDGE TREVOR N. McFADDEN
              UNITED STATES DISTRICT JUDGE
    _____

                   A P P E A R A N C E S

    For Plaintiff:      Susan Lehr
                        DOJ-USAO
                        1620 Dodge Street
                        Suite 1400
                        Omaha, NE 68102-1506
                        402-661-3700
                        Email:  Susan.lehr@usdoj.gov

    For Defendant:      Charles Burnham
                        BURNHAM & GOROKHOV PLLC
                        1424 K St. NW
                        Suite 500
                        Washington, DC 20005
                        202-386-6920
                        Email:  Charles@burnhamgorokhov.com

    _____

    Court Reporter:            Janice E. Dickman, RMR, CRR, CRC
                               Official Court Reporter
                               United States Courthouse, Room 6523
                               333 Constitution Avenue, NW
                               Washington, DC  20001
                               202-354-3267
```

1      THE COURTROOM DEPUTY: Your Honor, this is criminal
2 case 21-57, *United States of America versus Nicholas Rodean*.
3      Counsel, please introduce yourself for the record,
4 starting with the government.
5      MS. LEHR: Good morning. Susan Lehr for the
6 government. And I want to thank the Court and counsel for
7 accommodating my last minute continuance last week.
8      THE COURT: Good morning, Miss Lehr.
9      MR. BURNHAM: Good morning. Charlie Burnham here on
10 behalf of Mr. Rodean, appearing by video.
11     THE COURT: Good morning, Mr. Burnham, and good
12 morning, Mr. Rodean.
13     We're here for a status conference. And, also, I
14 anticipated doing a jury trial waiver colloquy.
15     Mr. Burnham, is your client still seeking to proceed
16 by a bench trial?
17     MR. BURNHAM: Yes, Your Honor. He's prepared to do a
18 colloquy to that effect.
19     THE COURT: Do you have paperwork for me to sign?
20     MR. BURNHAM: I don't, Your Honor. I apologize. I
21 prepared him to do a written colloquy, and Your Honor's clerk
22 had emailed me the form. I had forgotten the Court wanted the
23 written form and will execute that posthaste and will submit it.
24     THE COURT: Okay. I think we probably can still go
25 forward with the colloquy.

1    Mr. Rodean, are you comfortable proceeding virtually
2    for the purposes of today's hearing? If you prefer to do it in
3    person, I certainly can continue this and do it in person.
4            Just remember, you're on mute.
5            THE DEFENDANT: Yeah.
6            THE COURT: You are comfortable proceeding virtually?
7            THE DEFENDANT: Yes.
8            THE COURT: Okay. I think it is appropriate for us
9    to do so in light of the spike in omicron cases in the area and
10   the authorization laid out in the CARES Act.
11           Mr. Rodean, I'm informed that you desire to waive
12   your right to a jury trial; is that correct, sir?
13           THE DEFENDANT: Yes.
14           THE COURT: Before accepting your waiver to a jury
15   trial, there are a number of questions that I will ask you to
16   ensure that this is a valid waiver. If you do not understand
17   any of my questions, or at any time wish to interrupt the
18   proceeding to consult further with your attorney, please say
19   so, since it is essential to a valid waiver that you understand
20   each question before you answer. Do you understand, sir?
21           THE DEFENDANT: Yes.
22           THE COURT: And even though we're all kind of virtual
23   here, we can put you and Mr. Burnham in a breakout room
24   together so the two of you can speak privately at any time, if
25   you wish to do so.

1                   What's your full name, sir?
2                   THE DEFENDANT:  Nicholas Rodean.
3                   THE COURT:  Do you have a middle name, sir?
4                   THE DEFENDANT:  William.
5                   THE COURT:  And can you spell your middle name, sir.
6                   THE DEFENDANT:  W-I-L-L-I-A-M.
7                   THE COURT:  And how old are you, sir?
8                   THE DEFENDANT:  Um, twenty-seven.
9                   THE COURT:  How far did you go in school?
10                  THE DEFENDANT:  Um, I graduated high school.  I took
11     some college classes, but I didn't -- like, I -- basically just
12     high school.
13                  THE COURT:  Are you able to speak and understand
14     English, sir?
15                  THE DEFENDANT:  Yes.
16                  THE COURT:  What is your employment background?
17                  THE DEFENDANT:  Um, I, um, I mean, currently I'm, um,
18     like, walking dogs and taking care of -- at night taking care
19     of dogs.  I previously worked at Navistar, I previously worked
20     at Willy's Donuts, I previously worked at Walmart.  I -- I --
21     yeah.
22                  THE COURT:  Okay.  Sir, have you taken any drugs,
23     medicine or pills or consumed any alcoholic beverage in the
24     last 24 hours?
25                  THE DEFENDANT:  No.

1   THE COURT: Do you understand that you're entitled to
2   a trial by jury on the charges filed against you?
3   THE DEFENDANT: Yes.
4   THE COURT: Do you understand that a jury trial means
5   that you would be tried by a jury consisting of 12 people and
6   that all of the jurors must agree on the verdict?
7   THE DEFENDANT: Yes.
8   THE COURT: Do you understand that you have the right
9   to participate in the selection of the jury?
10  THE DEFENDANT: Yes.
11  THE COURT: Do you understand that if I approve your
12  waiver of a jury trial, the Court will try the case and
13  determine your innocence or guilt?
14  THE DEFENDANT: Yes.
15  THE COURT: Have you discussed with your attorney
16  your right to a jury trial?
17  THE DEFENDANT: Yes.
18  THE COURT: Have you discussed with your attorney the
19  advantages and disadvantages of a jury trial?
20  THE DEFENDANT: Yes.
21  THE COURT: Do you want to discuss this issue further
22  with your attorney now?
23  THE DEFENDANT: No.
24  THE COURT: Mr. Burnham, have you discussed with the
25  defendant the advantages and disadvantages of a jury trial?

1       MR. BURNHAM:  Yes, Your Honor.
2       THE COURT:  Do you have any doubt that the defendant
3  is making a knowing and voluntary waiver of the right to a jury
4  trial?
5       MR. BURNHAM:  No, Your Honor.
6       THE COURT:  Has anything come to your attention
7  suggesting that the defendant may not be competent to waive a
8  jury trial?
9       MR. BURNHAM:  No, Your Honor.
10      THE COURT:  Ms. Lehr, has anything come to your
11 attention suggesting that the defendant might not be competent
12 to waive a jury trial?
13      MS. LEHR:  No, Your Honor.
14      THE COURT:  I do find that the defendant has
15 knowingly and voluntarily waived his right to a jury trial and
16 I will approve that waiver and I will sign the proper form as
17 soon as Mr. Rodean and the attorneys have done so.
18      Mr. Burnham, I'll just ask you to provide an original
19 to my chambers.
20      All right.  I think all we need to do now is to set a
21 motion schedule.  I know we have a pretrial conference set for,
22 I think, May.  I'll tell you, given that this is going to be a
23 bench trial, I'm somewhat inclined to just vacate the pretrial
24 status conference and address any -- or, pretrial -- yeah,
25 pretrial status conference and motion hearing, and address any

1   issues before any trial.  But I guess I want to see what
2   motions are being filed, and if there's a reason why it
3   would -- we need to try to address those in advance of trial.
4              I guess I'll ask you, in your motions, if you think
5   this is something that particularly requires a decision before
6   the day of trial, to please indicate that in your motion.
7   Otherwise, as I said, my instinct is to save you all a trip to
8   the court and just address any motions the morning of trial.
9              I'll also say, since this is going to be a bench
10  trial, I imagine this trial is going to last hours, not days.
11  So, I just encourage the government to be thinking carefully
12  about conserving your resources, and mine, and looking to have
13  a streamlined trial.
14             So, we've got this May 13th pretrial conference.
15  Working back from that, I'll ask replies to any motions
16  in limine, motions to suppress, or any other affirmative
17  motions to be filed by May 6th.  I'll ask any -- for any
18  oppositions to any such motions to be filed by April 22nd.  And
19  I'll ask for any motions in limine, motions to suppress -- and
20  I should mention, any expert -- any expert notices and any
21  404(b) notices to be filed by April 1st.  So, April 1st is the
22  initial date, oppositions April 22nd, and replies by May 6th.
23             Any questions about that, Ms. Lehr, or any other
24  dates you believe we need to set at this point?
25             MS. LEVY:  No questions about that, no other dates.

1   Before we adjourn I want to address speedy trial, though.

2   THE COURT: Okay. Why don't you go ahead and do that
3   now, ma'am?

4   MS. LEHR: Thank you, Your Honor. In looking at the
5   docket sheet -- and I understand I am the latest one to this
6   case -- but it looks like speedy trial is only tolled until
7   today. I would ask that because of the Coronavirus and Omicron
8   strain and where the things are with the courts, that speedy
9   trial be tolled until the trial date of June 3rd.

10  THE COURT: Ma'am, I should have asked you, what is
11  the status of discovery here?

12  MS. LEHR: Your Honor, what we've been calling --
13  what I call preliminary discovery has been provided and has
14  been ongoing as new information comes to light. Frankly, there
15  has not been any new information in the last, probably, two
16  months or so. Specific discovery to this case that has been
17  provided includes FBI reports, videos, still photos, a damage
18  estimate of the property damage to the Capitol in which the
19  government alleges Mr. Rodean was involved, grand jury
20  testimony, geofence data and warrant, a timeline with video
21  screenshots that go basically shot-by-shot for the hour and ten
22  minutes that we claim Mr. Rodean was in the Capitol.

23  In addition, with respect to what the -- I know the
24  Court is familiar with the term "global discovery." Since the
25  last pretrial -- or, excuse me, since the last status

1  memorandum that was dated November 5th, the following video has
2  been shared to the defense instance of Evidence.Com and is
3  accessible to any Capitol breach defense counsel who request a
4  license from the federal public defender.  This includes 1,063
5  files, consisting of approximately 714 hours of body-worn
6  camera footage recorded by 675 Metropolitan Police Department
7  officers.
8  　　　　　At this juncture over 24,000 files, consisting of
9  U.S. Capitol Police, closed circuit video, body-worn camera,
10 and U.S. Secret Service surveillance photo -- or, footage, has
11 also been made available to the defense instance of
12 Evidence.Com.  We -- by "we" I mean the government -- has
13 provided the following tools, all of which comprise substantial
14 government work product, to include Metropolitan Police
15 Department radio, GPS spreadsheet.
16 　　　　　The discovery team in this case has obtained
17 Metropolitan Police Department radio GPS records for January
18 6th, 2021 and created a spreadsheet of data that may be plotted
19 on a time-scaled map using commercially available GPS mapping
20 software.  A particular officer's radio location information
21 can be used to search for body-worn camera footage from the
22 same time and location in Evidence.com.
23 　　　　　The government has also provided a body-worn camera
24 summary spreadsheet and related zone maps.  This is a
25 searchable, 752-page spreadsheet that was initially created by

1    over 60 individuals as an investigative tool to assist
2    prosecutors in locating relevant body-worn camera footage from
3    responding law enforcement agencies, including Metropolitan
4    Police Department, Montgomery County Police Department and
5    Fairfax County Police Department with respect to over 2,800
6    body-worn camera video files.  The spreadsheet provides the
7    name and number of the officer associated with the video -- by
8    "number" I mean officer's number, not identifying
9    information -- the video start time, a short summary of notable
10   events observed by the reviewer, including potential crimes
11   observed and the time the camera appears to enter the Capitol,
12   if any, and the apparent location of the camera between noon
13   and midnight using 15-minute periods of duration.  The
14   locations identified correspond to zone maps that section the
15   interior of the Capitol, the Lower West Terrace and the Capitol
16   grounds into smaller areas.
17           The government has also provided a U.S. Secret
18   Service video spreadsheet.  The discovery team created a
19   spreadsheet containing the file names and titles, starting
20   times, video length, and date of U.S. Secret Service video.  We
21   provided 15 camera maps of the interior of the Capitol Visitor
22   Center and the interior of the Capitol and one camera map of
23   the Capitol grounds.  The maps depict the general location of
24   the cameras that are identified by unique number in each U.S.
25   Capitol police CCV video file name.

```
 1                  We've also provided U.S. Capitol Police timeline of
 2     events for the January 6, 2021 attack.
 3                  Global productions made via USAfx since November
 4     5th -- and that would be numbers 8, 9, and 10 -- have continued
 5     to focus on materials most highly requested by defendants and
 6     include items such as two new U.S. Capitol Police Office of
 7     Professional responsibility reports and 16 associated exhibits;
 8     37 additional exhibits --
 9                  THE COURT:  Ms. Lehr.  Ms. Lehr.  Maybe I could
10     ask --
11                  MS. LEHR:  I'm sorry?
12                  THE COURT:  What's left?
13                  MS. LEHR:  I can't answer that, Your Honor, partially
14     because additional evidence, frankly, comes in every day.
15                  THE COURT:  So --
16                  MR. BURNHAM:  May I be heard?
17                  THE COURT:  I guess that's a little troubling here,
18     given that we're over a year past the incident, almost exactly
19     a year into this case.  We've got a, you know, motions hearings
20     and a trial date now not that far in advance.  What do we do if
21     you, you know, continue providing discovery up to and through
22     these dates?
23                  MS. LEHR:  Your Honor, I believe the government has
24     provided all of the known information we have as it relates to
25     Mr. Rodean.  When I say evidence continues to come in,
```

1    people -- new defendants are brought into court or are arrested
2    weekly.  As a result of that, new cell phones are searched that
3    we haven't had access to.  Different people post different
4    things online.  There is a universe of data out there that we,
5    frankly, don't know what exists.
6            Of the information that is known to exist, I believe
7    the government has turned that information over to Mr. Burnham.
8            THE COURT:  All right.  Mr. Burnham?
9            MR. BURNHAM:  Your Honor, if the Court recalls, at
10   the last status hearing Mr. Rodean and I were pushing for a
11   little bit later trial date than the Court ended upsetting.
12   And part of the purpose of today's hearing, as I understand
13   Your Honor's intention, was to reassess where we were with
14   discovery, that being our main concern.
15           And so just adding to what the government has
16   provided us, Discovery 10 -- two things, really, Discovery 10
17   was just produced a few days ago and Mr. Rodean and I haven't
18   gotten to go much of the way through it.  I just did a
19   preliminary look and it appears to be over 120-some gigabytes
20   of material.  It's a lot of -- a lot of stuff in Discovery 10,
21   and that might not be the last production.
22           Secondly, the Evidence.com database has been up and
23   running for some time.  The Relativity database was just
24   unveiled to the defense community just within a few days, and I
25   have to request my licenses from the federal defender and get

1   into that.  So I haven't even begun to engage with the
2   Relativity database.  And the most recent correspondence from
3   the government speaks in terms of further productions to be
4   made once the Relativity database is up.
5           So, I don't -- I don't have great insight -- and this
6   is not a personal thing with any of the U.S. attorneys that
7   have been in this case -- but I don't have great insight into
8   what may be coming down the road.  So our concern with the
9   timeline of this case and discovery remains very much as we
10  stated them at the last hearing.
11          THE COURT:  All right.  So, I guess -- that's what
12  I'm trying to get on top of.  Because I'm not willing just for
13  this to go on indefinitely.  If you're telling me, Mr. Burnham,
14  that you don't think you have time, based on what is currently
15  in front of you, to prepare for trial, that's one thing.  If
16  you're telling me that you're concerned that discovery is going
17  on indefinitely and who knows when you're going to be ready,
18  that's a different concern in my mind.
19          MR. BURNHAM:  It's both, Your Honor.  It's both based
20  on what I've received, including Discovery 10, that would be
21  sufficient by itself, and then what may come is an additional
22  issue.
23          THE COURT:  Okay.  So, Ms. Lehr, did I understand you
24  correctly, did you say the government has turned over
25  everything it has and the only additional information that it's

1    going over now is a new arrest today or something like that,
2    where there is new information that is not currently in the
3    government's control?
4              MS. LEHR:  Your Honor, I believe that Mr. Birney has
5    turned over everything that he knew that specifically related
6    to Mr. Rodean.  There are -- I don't have everything that Ms.
7    Miller and the discovery team has at their disposal.  My
8    understanding is -- well, I should say, I'm not aware of
9    anything that specifically relates to Mr. Rodean.
10             But I can't, as an officer of the court, tell this
11   Court that there is nothing in that that relates to him.  I
12   just don't know that.  And that's one of the reasons why the
13   discovery team wants to give this massive information to all
14   the defense counsel, so that if there's something I don't know
15   about, maybe they do, maybe somebody else does, maybe there's
16   an image of Mr. Rodean on somebody else's phone that I don't
17   know about, or that was on somebody's Facebook or posted on
18   somebody's YouTube or some international newsreel.  And those
19   are places -- I don't mean to be coy, those are all places that
20   we collectively have found data or video or posts of and about
21   various defendants in this prosecution.
22             So, I can represent to the Court, the government has
23   given Mr. Rodean's counsel everything that we have that we
24   specifically know relates to Mr. Rodean.
25             THE COURT:  I understand that.  And this is not at

1    all aimed at you, Ms. Lehr, but you are continuing to turn over
2    information because you think it's -- it may be relevant to
3    this case that, you know, Mr. Burnham, for the same reason, is
4    going to have to go through it.
5             So that kind of comes to my concern about this
6    ongoing drip, drip, drip of information that makes it very
7    difficult for defense or the Court to ever know when we can
8    realistically go to trial.
9             MS. LEHR:  I guess -- I understand that, and I share
10   that concern because, frankly, I don't want to be accused of
11   not turning something over.  But, I can tell you, I
12   individually cannot watch the -- I can try and will continue to
13   try to watch the hundreds of thousands of hours of video that
14   are available.  I -- again, like I said, there's new evidence
15   that comes in all the time, and as new evidence comes in, we
16   want to get it out, and that's what we're endeavoring to do.
17            THE COURT:  All right.  Well --
18            MS. LEHR:  I guess -- I guess one of the things I
19   would add, without going into the specific evidence, based on a
20   lot of the -- based on the evidence I've seen, I don't
21   anticipate something coming in that would exonerate Mr. Rodean.
22   But, again, I don't know, Your Honor.  Like I said, as soon as
23   I get the evidence, I am turning it over to Mr. Burnham.
24            THE COURT:  Yeah.  I understand that.  The public
25   also has an interest in a speedy trial.

1                MS. LEHR:  I understand.

2                THE COURT:  And where -- that is weighing on me.

3    And, you know, you're new to this case, and a detailee, I

4    believe.  This is certainly not about you, but we are a year in

5    and I'm just -- I'm not willing to keep tolling the speedy

6    trial clock while information -- you know, without any kind of

7    confidence that there's an end in sight or that we're going to

8    be able to keep this trial date.

9                I think what I want to do is set another status

10   conference in about a month.  I'm not going to toll the speedy

11   trial clock in the interim.  If there comes a point where the

12   government has confidence that it has turned over essentially

13   all of the discovery, it can file a motion to that effect and

14   certainly talk with Mr. Burnham about some sort of timeline

15   here.

16               But the conduct of which the defendant is accused is

17   relatively straightforward.  I think a June trial date feels

18   very doable to me, but for the ongoing discovery that does -- I

19   understand, puts Mr. Burnham in kind of an impossible situation

20   for preparing trial.  So, I think we need to find a solution to

21   that.

22               How about 11 a.m. on Friday, February 18th?  Ms. Lehr

23   does that work for you?

24               MS. LEHR:  It does, Your Honor.

25               THE COURT:  Mr. Burnham, does that work for defense?

1          MR. BURNHAM:  Your Honor, I have a 10 a.m. hearing
2  that morning in EDVA that should be pretty quick, but I can't
3  say for sure.
4          THE COURT:  All right.  Mr. Burnham, that afternoon,
5  1:30?
6          MR. BURNHAM:  That would be fine.
7          THE COURT:  Ms. Lehr, does that work for you?
8          MS. LEHR:  It does, Your Honor.
9          THE COURT:  Okay.  Let's set this for a continued
10 status conference at 1:30 on Friday, February 18th.
11         I'm not going to be tolling the speedy trial clock in
12 the interim.
13         Ms. Lehr, anything further for the government?
14         MS. LEHR:  Not to be beat a dead horse, Your Honor,
15 what concerns me is if the clock is not tolled from now until
16 the trial date of June 3rd, our speedy trial would expire
17 before that.
18         THE COURT:  I understand that.  I'm obviously willing
19 to reconsider this in a month.  I understand that point, but I
20 hope you understand mine, too, that we need to have -- we need
21 to kind of reach the bottom on the universe of information that
22 Mr. Burnham needs to prepare for.  And this case is almost a
23 year old.  It's hard for me to understand why we aren't there
24 yet.
25         Mr. Burnham, anything further for the defense?

```
 1                  MR. BURNHAM:  No.  Thank you, Your Honor.
 2                  THE COURT:  All right.  Could I talk to the attorneys
 3     in a breakout room quickly?
 4                  THE COURTROOM DEPUTY:  And just the attorneys, Your
 5     Honor?
 6                  THE COURT:  Yes.
 7                  (Pause.)
 8                  THE COURT:  All right.  I don't think there's
 9     anything further, so I will see the parties on February 18th.
10     And that will be for a virtual status conference.
11                  Have a good day.
12                  MR. BURNHAM:  Thank you, Your Honor.
13                  MS. LEHR:  Thank you.
14                                    *   *   *
15
16
17
18
19
20
21
22
23
24
25
```

CERTIFICATE OF OFFICIAL COURT REPORTER

    I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 9th day of March, 2022

_____

Janice E. Dickman, CRR, CMR, CCR
Official Court Reporter
Room 6523
333 Constitution Avenue, N.W.
Washington, D.C.  20001