UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00057-TNM |
| | : | |
| NICHOLAS RODEAN, | : | |
| | : | |
| Defendant. | : | |

## MOTION IN LIMINE REGARDING
## AUTHENTICATION OF CERTAIN VIDEO EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following motion *in limine* regarding the authentication of certain video evidence at trial.

### BACKGROUND

The riot at, and attack on, the United States Capitol Building was an event of unparalleled size and scope. Much of the event was recorded on video: on surveillance footage captured by the U.S. Capitol Police ("USCP") cameras; on Metropolitan Police Department ("MPD") body-worn cameras; on cameras carried by journalists; and on cameras and phones operated by rioters. The government's case at trial will rely heavily on USCP camera footage to prove the defendant's specific conduct and the greater context in which it took place. Should the defense not stipulate to the authenticity of this footage, the government will call an appropriate witness at trial. But the government may also introduce footage from videos taken by other people on the scene; for this set of video evidence, the government seeks a pretrial ruling on authenticity.

Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a

1

finding that the item is what the proponent claims it is." Rule 901(b) provides a non-exhaustive list of examples of evidence that satisfies this requirement. As relevant here, those examples include:

> (3) *Comparison by an Expert Witness or the Trier of Fact*. A comparison with an authenticated specimen by an expert witness or the trier of fact.
> (4) *Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901(b)(3), (4).

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]" (citation and quotation marks omitted)). Rule 901 "requires only a prima facie showing of genuineness and leaves it to the [finder of fact] to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v.*

*Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the [finder of fact]." *Vidacek*, 553 F.3d at 349; *see also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

To make out a prima facie showing of authenticity, "circumstantial evidence of authenticity can be sufficient." *United States v. Bruner*, 657 F.2d 1278, 1284 (D.C. Cir. 1981). *See, e.g.*, *United States v. Broomfield*, 591 F. App'x 847, 851 (11th Cir. 2014) (unpublished) ("Authentication may be established 'solely through the use of circumstantial evidence.'" (quoting *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). And, importantly, the party seeking to admit evidence need not "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Holmquist*, 36 F.3d 154, 168 (1st Cir. 1994). Rather, "the government must only 'demonstrate that, as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated.'" *United States v. Celis*, 608 F.3d 818, 842 (D.C. Cir. 2010) (quoting *United States v. Stewart*, 104 F.3d 1377, 1383 (D.C. Cir. 1997)); *see, e.g.*, *United States v. Bowens*, 938 F.3d 790, 794-95 (6th Cir. 2019) (explaining that "[a]nyone could have used the defendants' Facebook accounts, just as the pictures could have depicted the men smoking tobacco cigars, and 'getting high' could have been a reference to skydiving," but that there was sufficient circumstantial evidence "for the jury to infer that the accounts belonged to the defendants, and that the defendants were the authors of the posts about using marijuana"); *Broomfield*, 591 F. App'x at 852 (finding sufficient evidence of authenticity even though "there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged").

In deciding preliminary questions about the admissibility of these videos, "[t]he court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In other words, the government may rely upon otherwise inadmissible evidence in establishing the authenticity of the video evidence described in this motion. *See, e.g.*, *United States v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997). Of course, even with a pretrial ruling that evidence is authentic, and thus admissible, the government must introduce sufficient evidence at trial from which a reasonable fact-finder could reach the same conclusion regarding authenticity. *See, e.g.*, *United States v. Gammal*, 831 F. App'x 539, 542 n.6 (2d Cir. 2020) (unpublished) ("Insofar as the District Court relied on non-public information to make its preliminary determination, it did not err because it did not do so in lieu of the presentation of sufficient authenticating public evidence later at trial."); *United States v. Puttick*, 288 Fed. App'x 242, 246 (6th Cir. 2008) (unpublished) ("It is permissible for the judge to make a preliminary determination as to authentication, admit the evidence conditionally under Rule 104(b), and then allow the jurors to be the final arbiters of whether it was actually authenticated."); *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992) ("Thus, even though the district court may have ruled during an in camera proceeding that the proponent had presented sufficient evidence to support a finding that a tape recording was authentic, evidence that would support this same ruling must be presented again, to the jury, before the tape recording may be admitted.").

## ANALYSIS

The government anticipates offering video clips from the United States Capitol Police, as well as from sources other than the USCP. Some of these other sources include reporters who were present in the Capitol that day, the defendant's fellow rioters, or other members of the crowd. Many of the videos were obtained through open-source means and are publicly available. For any

such videos, the government will establish authenticity by asking the Court to compare it with other, authenticated exhibits: in particular, USCP footage. Fed. R. Evid. 901(3). Police footage will confirm that such videos are what they purport to be: recordings of the same events, captured from a slightly different perspective, and in some cases depicting events and sounds that were not captured by the USCP systems. In addition, the distinctive features of the interior of the Capitol building and of the other individuals in the footage will help authenticate the videos. *Id*. at 901(4).

One video in particular that the government may seek to offer is a video taken by another person on the scene (and widely publicized on Youtube and other platforms)[1] at approximately the same time that the defendant broke a window near the Senate Wing Doors of the Capitol building. There was a two-paned window on each side of those doors; when looking at the windows from inside the building, the window the defendant broke is to the right, and the window other rioters broke is to the left.  The government will introduce USCP video of the defendant breaking the right-side window at roughly the same time that other rioters broke the left-side window; the perspective of that USCP video will be from inside the building.  The government also seeks to introduce video from another person on the scene that captures precisely the same moment and the same window-breaking as shown on the USCP video, but taken from the vantage point just outside the building.  This different perspective will be valuable in showing what the defendant himself was perceiving shortly before, and during the time he was breaking his window, and generally providing context to his conduct.

---

[1] The full video is available on Youtube, here: https://www.youtube.com/watch?v=jtPmi4BShNM (last accessed Apr. 1, 2022).

Here is a screenshot from USCP video of both windows being broken – a wooden beam is protruding into the left-side window, and the defendant, although not yet visible, is approaching the right-side window:



Here is a screenshot from another person's video, at roughly the same moment as the above screenshot, showing the same event from just outside the left-side window – as evident from the wooden beam that protrudes partially into the building:



Should the government elect to offer other video clips taken by other persons present in the crowd, the government will file a supplement prior to trial detailing the clips to be used and the factors supporting authenticity of those clips.

## CONCLUSION

For the reasons stated herein, the government respectfully requests that this Court rule *in limine* that the government's video evidence from non-USCP sources satisfies the authenticity requirement of Fed. R. Evid. 901.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:   *s/ Susan T. Lehr*
SUSAN T. LEHR
Assistant United States Attorney
NE BAR No. 19248
Capitol Riot Detailee
1620 Dodge St., #1400
Omaha, NE 68102
(402) 661-3715
Susan.Lehr@usdoj.gov

*s/ Cindy J. Cho*
CINDY J. CHO
Assistant United States Attorney
Member of NY Bar
Capitol Riot Detailee
10 W. Market St., Ste 2100
Indianapolis, IN 46204
(317) 246-0107
Cindy.Cho@usdoj.gov