UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-cr-00057-TNM |
| | : | |
| NICHOLAS RODEAN, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S TRIAL BRIEF

The United States of America, by and through its attorney, respectfully submits this brief summarizing the government's evidence at trial, along with various issues likely to be brought before the Court.

**I.    BACKGROUND**

On January 6, 2021, Nicholas Rodean, a 29-year-old from Frederick, Maryland, broke two large panes of glass in a window adjacent to a door in the Senate Wing of the U.S. Capitol building. To break the two panes, he used a flagpole with a "Trump is My President" flag attached and a small round object that resembled half of a softball. He entered the building at approximately 2:13PM. He was the 15th rioter to illegally enter the U.S. Capitol building that day.

As Rodean broke the window with his flagpole and ball, other rioters were breaking the window on the other side of the door with a riot shield and a wooden beam, while still other rioters were attacking the door. Rioters swarmed the area and yelled over the noise of glass breaking.

After breaking the window glass, Rodean climbed through the emptied frame and into the building. A high-pitched alarm sounded inside as the defendant and a small crowd of other rioters proceeded north down a hallway, and then east down a second hallway. At that point, the small crowd of people who first entered the building (including Rodean) encountered a U.S. Capitol

1

Police (USCP) officer. Rodean and others pursued the USCP officer up two flights of stairs to the second floor of the building.

Rodean, as part of that crowd of rioters, then proceeded to a long hallway (the "Ohio Clock corridor") outside of the floor of the Senate Chamber. Just moments before, as Rodean broke into the building, the Senate had gone into recess. Rodean remained in the Ohio Clock corridor for more than 30 minutes, at times standing directly in front of USCP officers who had stationed themselves in the middle of the corridor.

At one point, a USCP officer in the corridor noticed the small round object in Rodean's hand. He and another officer spoke with Rodean and convinced him to put away the object. Rodean then took out a hatchet, which they also convinced him to put away. At that point, the officers requested permission to search one of his bags, and he consented.

After posing for a photo while waving his flag, he was one of the last rioters to leave the Ohio Clock corridor. He exited the building thereafter, at around 2:55PM.

Before he entered the Capitol building, Rodean was part of a group of rioters who pushed past USCP officers stationed on terrace stairs next to scaffolding set up on the northwest side of the building. After getting to the top of the terrace stairs on the northwest terrace, this group again pushed past police officers and also bike racks, in order to eventually get to the door and windows near the Senate Wing of the building – where Rodean broke the window.

Rodean had earlier informed his supervisor at the Frederick warehouse where he worked that he was going to miss work on January 6, 2021, to attend President Trump's rally. Late on the evening of January 6, 2021, the supervisor became concerned and angry after seeing what he believed was a photo of Rodean inside the Capitol building. He called Rodean, who didn't answer

but called back the next day. According to the supervisor, Rodean's response to the supervisor's concern that he had unlawfully entered the Capitol was simply that "it needed to be done."

Rodean is charged in a Superseding Indictment, Dkt. 40, with the following crimes relating to his activities on January 6:

| | | |
|---|---|---|
| Count 1: | | Destruction of government property valued at more than $1,000, 18 U.S.C. § 1361; |
| Count 2: | | Entering and remaining in a restricted building or grounds, 18 U.S.C. § 1752(a)(1); |
| Count 3: | | Disorderly and disruptive conduct in a restricted building or grounds, 18 U.S.C. § 1752(a)(2); |
| Count 4: | | Engaging in physical violence in a restricted building or grounds, 18 U.S.C. § 1752(a)(4); |
| Count 5: | | Disorderly conduct in a Capitol Building, 40 U.S.C. § 5104(e)(2)(D); |
| Count 6: | | Act of physical violence in the Capitol Grounds or Buildings, 40 U.S.C. § 5104(e)(2)(F); |
| Count 7: | | Parading, demonstrating, or picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G). |

## II.   THE GOVERNMENT'S PROOF

The government has attempted to streamline its evidence in this case to avoid unnecessary duplication and to focus on the defendant's words and actions. The government plans to present testimony from USCP Inspector Thomas Loyd. Inspector Loyd will provide a brief overview of the areas of the Capitol building and grounds where Rodean was on January 6, 2021. He will also discuss the key events surrounding Rodean's breach of the Capitol, including the Vice President's presence – protected by Secret Service – in the building at that time.

The government will also present testimony from USCP Officer Brian Morgan. Officer Morgan interacted with Rodean while Rodean was in the Ohio Clock corridor. Both of these

witnesses' testimony will be accompanied by videos and photographs of Rodean on the Capitol grounds and in the building.

The government plans to present testimony from the Architect of the Capitol's Deputy Superintendent Jason McIntyre. McIntyre was part of the team that oversaw repairs stemming from damage caused by rioters on January 6, 2021, including the window Rodean broke.

Finally, the government plans to present testimony from Rodean's supervisor at the Frederick warehouse where he worked. The supervisor spoke with Rodean about his activities on January 6.

### A.   Stipulations

The parties have discussed a number of potential stipulations, and they have reached tentative stipulations to the following facts: (1) the operation and maintenance of closed-circuit video monitoring and recording equipment used by the USCP on January 6, 2021; and (2) the authenticity of videos from third parties present at the Capitol on January 6, 2021.

### B.   Self-Authenticating Evidence

The government will request admission of excerpts from the Congressional Records for both the Senate and the House of Representatives on January 6, 2021; these documents describe the proceedings before Congress that day, as well as their disruption. *See* 167 Cong. Rec. S13-S14, H75-H76, H84, H85 (2021). These excerpts are self-authenticating documents under Fed. R. Evid. 902(5).

In addition, the government will request admission of an approximately 10-minute "Official Proceedings" video that consists of these Congressional Record excerpts, as well as video footage from the United States Senate Recording Studio and House Recording Studio. The Court is familiar with this video from other trials relating to January 6, 2021. *See, e.g., United States v.*

*Cuoy Griffin*, Case No. 1:21-cr-92 (D.D.C. Mar. 22, 2022) (admitting over objection trial Exhibit 72, "Official Proceeding Video"). The video footage was produced to defense counsel with a certificate of authenticity from each recording studio, in conformity with Fed. R. Evid. 902(11).

### C.     Government Witness Testimony

In addition to introducing stipulated and self-authenticating evidence, the government intends to call four witnesses to testify at trial.

#### 1.     U.S. Capitol Police Inspector Thomas Loyd

The government will present testimony from Inspector Thomas Loyd, a veteran of the U.S. Capitol Police. He will provide an overview of the Capitol building and grounds, establishing the restricted area. He will also testify that the former Vice President was visiting the building that day, under the protection of U.S. Secret Service agents. And he will establish that the certification of the Electoral college vote began, but was disrupted. In *United States v. Kevin Seefried, et al.*, Case No. 21-cr-287, the Court heard testimony from Inspector Loyd regarding these items, as well as his actions defending the Capitol from rioters on the west side of the building, and coming inside to the Ohio Clock corridor. Because Rodean was in the same areas of the building as the *Seefried* defendants, there will be overlap in portions of his testimony from that trial.

Inspector Loyd will introduce videos of Rodean just outside of the building, as well as inside the building.

He will also introduce the "Official Proceedings" video. This video will establish the close timing between Rodean breaking the window near the Senate wing of the building and making his way to the Ohio Clock corridor, and the Senate standing in recess after beginning the process to certify the Electoral College vote. Inspector Loyd will also testify that Rodean and the other rioters in the Ohio Clock corridor ignored instructions to leave.

5

### 2. U.S. Capitol Police Officer Brian Morgan

Officer Brian Morgan will testify that he was in the Ohio Clock corridor at the same time as Rodean. The government anticipates that he will testify that he spotted what he thought was a small cannonball in Rodean's hand, and that he questioned him regarding the object. He will testify that he noticed Rodean holding the object, spoke with him about it, and eventually asked him to put it away. As Rodean was putting the ball away, Officer Morgan will testify, Rodean took a hatchet out of his shoulder bag. He will further testify that one of his colleagues began searching one of Rodean's bags, and during the search, Officer Morgan engaged Rodean in conversation. Rodean indicated that he was from Frederick, Maryland, and that he was there to "stop the steal."

Video clips will show Rodean speaking with Officer Morgan and other officers. Videos will also show that both before he entered the Ohio Clock corridor, and shortly before he left, Rodean posed for photos waving his flag. He then exited the building at 2:55PM.

Like Inspector Loyd, Officer Morgan testified before this Court in the *Seefried* trial. The government has focused Officer Morgan's testimony on his interactions with Rodean in the Ohio Clock corridor, to avoid any unnecessary overlap.

### 3. Architect of the Capitol Deputy Superintendent Jason McIntyre

Deputy Superintendent Jason McIntyre will testify that the damage to the window Rodean broke was more than $1,000.

### 4. L.P.

L.P., Rodean's supervisor at the Frederick warehouse where he worked, will testify at trial that Rodean requested time off from work to go to Washington, D.C., for a President Trump-related rally. Through the friendly relationship he had with Rodean, he spoke with Rodean both

6

before and after January 6, 2021.  In conversations before January 6, Rodean indicated that President Trump would remain the president.  In a brief phone call after January 6, when L.P. asked Rodean about his presence in the Capitol building, Rodean indicated that, in his view, he had done what needed to be done.

D.     **Elements of the Crimes Alleged**

The elements of the charged offenses are as follows[1]:

Count One

Count One charges Rodean with destruction of government property, in violation of 18 U.S.C. § 1361.  In order to find him guilty of injuring, damaging, or destroying government property of the United States, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First that the defendant injured, damaged, or destroyed property, of that he attempted to injure, damage, or destroy property[2];

2. That the defendant did so willfully;

3. That the property involved was the property of the United States, or of any department or agency thereof, or any property which had been or was being manufactured or constructed for the United States, or any department or agency thereof, however, the government does not need to prove that the defendant knew that the property belonged to the United States;[3] and

---

[1] The instructions are the same instructions used by this Court in the *Seefried* trial.

[2] Although Section 1361 refers to committing a "depredation" against property, the Modern Federal Jury Instructions does not use that term, instead using "damaged (*or* destroyed)," because "the term used in the statute – 'depredation' – is unlikely to be in the vocabulary of the average juror . . . Instead, as courts routinely refer to 18 USC § 1361 as involving 'damage' to government property, that term is substituted."  2 Modern Federal Jury Instructions, ¶ 44A.01, Comment to Instruction 44A-4 (footnote with case citations omitted).  Similarly, the Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina (Eric William Ruschky, 2020 Online Edition) use "injured or damaged" for this element.

[3] *United States v. LaPorta*, 46 F.3d 152, 158–59 (2d Cir. 1994) (Section 1361 does not require proof that defendants know that they are destroying government property; government's title to property is jurisdictional fact, not a scienter requirement); *United States v. Krause,* 914 F.3d 1122, 1127 (8th Cir. 2019) ("The plain language of the statute unequivocally does not demand that a

  4.  That the damage or attempted damage to the property in question exceeded the sum of $1,000.

*See* 18 U.S.C. §1361; *see also United States v. Jones*, 607 F.2d 269, 273-74 (9th Cir. 1979).

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[4]

The Court may also find that Rodean is guilty of aiding and abetting others in the commission of a violation of 18 U.S.C. § 1361, provided that the government proves the following beyond a reasonable doubt:

  1.  First, that others violated 18 U.S.C. § 1361, by committing each of the elements of the offense charged;
  2.  Second, that the defendant knew that the offense of 18 U.S.C. § 1361 was going to be committed or was being committed by others;
  3.  Third, that the defendant performed an act or acts in furtherance of the offense;
  4.  Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense; and
  5.  Fifth, the defendant did that act or acts with the intent that others commit the offense.

*See* 18 U.S.C. § 2(a); Redbook 3.200; Third Circuit Model Jury Instructions 7.02.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, the Court may consider all of the evidence including what the defendant did or said.[5]

---

person have knowledge that the property willfully injured or destroyed belongs to the United States. Although the word 'willfully' requires that Krause acted knowingly and voluntarily, the terms does not relate to the latter phrase: 'property of the United States.' This language merely lays out a jurisdictional prerequisite: the property must belong to the United States for a person to be guilty of this offense.") (citation omitted).

[4] Third Circuit Model Jury Instruction, Criminal, 5.05 ("Willfully"); *United States v. Bryan*, 524 U.S. 184, 190 (1998).

[5] Seventh Circuit Pattern Criminal Jury Instruction 4.10.

Count Two

Count Two charges Rodean with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1). In order to find him guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. Second, that the defendant did so knowingly.

18 U.S.C. § 1752; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021).

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.[6]

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.[7]

The term "knowingly" has the same meaning as previously defined.

Count Three

Count Three charges Rodean with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2). In order to find him guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

---

[6] 18 U.S.C. § 1752(c).
[7] 18 U.S.C. § 3056.

    3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

18 U.S.C. § 1752(a)(2).

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.[8]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[9]

The terms "restricted building or grounds" and "knowingly" have the same meanings as previously defined.

## Count Four

Count Four charges Rodean with physical violence against property, in violation of 18 U.S.C. § 1752(a)(4). In order to find him guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

    1. First, that the defendant engaged in any act of physical violence against any person or property in any restricted building or grounds; and

    2. Second, that the defendant did so knowingly.

18 U.S.C. § 1752(a)(4).

The term "knowingly" has the same meaning as previously defined.

The term "act of physical violence" is not defined within this section, but should draw its meaning from 40 U.S.C. § 5104(a)(1), set forth below.

## Count Five

---

[8] *See* Redbook 6.643.
[9] *Id*.

Count Five charges Rodean with disorderly or disruptive conduct in a Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D). In order to find him guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3. Third, that the defendant acted willfully and knowingly.

40 U.S.C. § 5104(e)(2)(D).

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "disorderly or disruptive conduct" has the same meaning as previously defined.

The terms "willfully" and "knowingly" have the same meanings as previously defined.

### Count Six

Count Six charges Rodean with acts of physical violence in the Capitol Grounds or Building, in violation of 40 U.S.C. § 5104(e)(2)(F). In order to find him guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in an act of physical violence in the Grounds or any of the Capitol Buildings; and

2. That the defendant did so willfully and knowingly.

40 U.S.C. § 5104(e)(2)(F).

The term "act of physical violence" is defined as "any act involving (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property."[10]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings as previously defined.

### Count Seven

Count Seven charges Rodean with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find him guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings;
2. Second, that the defendant acted willfully and knowingly.

40 U.S.C. § 5104(e)(2)(G).

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[11]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings as previously defined.

---

[10] 40 U.S.C. § 5104(a)(1).
[11] *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

### III. ANTICIPATED ISSUES

The government anticipates that Rodean may dispute that he caused the damage to the windowpanes at the Capitol Building, as charged in Counts 1, 4, and 6. But as the video evidence and plain language of the statutes show, there is more than enough evidence to convict him beyond a reasonable doubt on each of the three charges.

Rodean was not the only rioter to attack the two windowpanes that he is charged with damaging in these counts, but he was certainly a (if not the) primary contributor to the destruction of both. The window at issue consists of four separate panes, and when standing just outside of the building and looking toward the building, it is the four-paned window to the left of the door. The four-paned window to the right of the door was the window at issue in the *Seefried* trial.

The Court will see the facts clearly on video at trial: The first pane of the window at issue in this case was cracked by another rioter, who punched it with a closed fist and then walked away. A web-shaped crack was created by this first attack. The window remained undisturbed for about twenty seconds while rioters milled around outside. Then, a second rioter attacked the same spot in the first pane, with a small round object, and then with his hands. This second rioter succeeded in creating a small hole in the first pane. A third rioter began attacking the second pane at the same time, pounding on it with a closed fist, but not succeeding in creating any visible cracks.

Just seconds after the second and third rioters began attacking, Rodean appeared behind the second rioter and began to strike the first pane repeatedly, using the end of a white flagpole with a red flag attached to it. Rodean quickly replaced the second rioter as the only person in front of the first pane. He continued striking the first pane with the flagpole, succeeding in making the small hole in the window slightly bigger. Shortly after Rodean began striking at the first pane with his flagpole, he appeared to be handed the small round object from someone else, presumably the

13

second rioter. Rodean then used the small round object to strike the first pane, knocking out the entire bottom portion of the first windowpane.

At the same time Rodean was using the small round object to knock out the first pane, the third rioter (who had thus far been unsuccessful in breaking the second pane) began mounting an outer ledge of the building, and then repeatedly kicked the second pane with his shod foot. The third rioter succeeded in creating a large web-shaped crack in the first pane. Once Rodean finished off the first pane, he turned to the cracked second pane and began using the small round object to strike repeatedly at the glass. Together with the third rioter, Rodean knocked out the entire bottom portion of the second windowpane.

These facts more than satisfy the elements of Counts 1, 4, and 6 set forth above. Count 1, the property damage charge under 18 U.S.C. § 1361, allows for conviction based either on damaging, or attempting to damage, property. Rodean's actions show that although others participated in the destruction of the two windowpanes, he was a primary actor and primary damager of the property. In the alternative, Rodean was certainly guilty of aiding and abetting the other rioters in the commission of violating 18 U.S.C. § 1361.

Counts 4 and 6 set forth a slightly different standard of proof than Count 1 and encompass a broader range of actions than Count 1. They charge Rodean with "engag[ing] in any act of physical violence" against the property. In turn, "act of physical violence" is defined as "any act involving damage to . . . real property." 40 U.S.C. §5104(a)(1)(B). Rodean's attacks on both windowpanes are more than actions that *involve* damage to property; they damage the property directly.

Rodean may also dispute that he had the requisite *mens rea* to have committed the charged crimes. But Rodean was no passive bystander. He was outside on the west side of the building,

emerging from scaffolding and charging up the terrace stairs past law enforcement officers who had set up multiple barricades. He was one of the first rioters to reach the Senate Wing door, and to break into the building. He joined the small group of rioters who pursued a USCP officer through the building, and finally to the Ohio Clock corridor. Despite orders from at least one officer for rioters like Rodean to leave the building, he did not. Instead, he lingered, at times parading, in the Ohio Clock corridor for over 30 minutes. Most importantly, when he woke up that morning and headed to the rally, he packed in his bag a hatchet – a signal that he planned for violence and destruction. His actions matched the purpose he communicated to his supervisor and the USCP officer – that he was there to stop the steal and that he did what needed to be done.

As a result, this evidence, as well as other evidence the government introduces at trial, will establish that Rodean is guilty of Counts 1, 4, and 6.

## IV.  CONCLUSION

The evidence introduced at trial will establish beyond a reasonable doubt that the defendant is guilty of all seven counts in the Superseding Indictment.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:   *s/ Cindy J. Cho*
CINDY J. CHO
Assistant United States Attorney
Detailee, Member of NY Bar
601 D Street, NW
Washington, DC 20530
(317) 246-0107
Cindy.Cho@usdoj.gov

Melanie L. Alsworth
Trial Attorney
Detailee, AR Bar No. 2002095

15

                601 D Street, NW
                Washington, DC 20530
                (202) 598-2285
                Melanie.Alsworth2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that July 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties listed on the Electronic Case Filing (ECF) System.

                                            By: */s/ Cindy J. Cho*
                                                CINDY J. CHO
                                                Assistant United States Attorney