```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                          FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,         .
                                        .  Case Number 21-cr-57
 4              Plaintiff,              .
                                        .
 5         vs.                          .
                                        .  Washington, D.C.
 6    NICHOLAS RODEAN,                  .  July 12, 2022
                                        .  11:00 a.m.
 7              Defendant.              .
      - - - - - - - - - - - - - - - - -
 8

 9                  TRANSCRIPT OF BENCH TRIAL, VOLUME II
                  BEFORE THE HONORABLE TREVOR N. McFADDEN
10                     UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the United States:       CINDY CHO, ESQ.
                                   United States Attorney's Office
13                                 10 West Market Street
                                   Suite 2100
14                                 Indianapolis, Indiana 46204

15                                 MELANIE ALSWORTH, ESQ.
                                   United States Department of Justice
16                                 145 N Street Northeast
                                   Washington, D.C. 20530
17

18    For the Defendant:           CHARLES BURNHAM, ESQ.
                                   Burnham & Gorokhov PLLC
19                                 1424 K Street Northwest
                                   Suite 500
20                                 Washington, D.C. 20005

21    Official Court Reporter:     SARA A. WICK, RPR, CRR
                                   United States District Court
22                                    for the District of Columbia
                                   333 Constitution Avenue Northwest
23                                 Room 4704-B
                                   Washington, D.C. 20001
24                                 202-354-3284

25    Proceedings recorded by stenotype shorthand.
      Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2          (Call to order of the court.)
 3              COURTROOM DEPUTY:  This is Criminal Case 21-57, United
 4   States of America versus Nicholas Rodean.
 5          Counsel, please come forward to identify yourselves for the
 6   record, starting with the government.
 7              MS. CHO:  Your Honor, Cindy Cho and Melanie Alsworth
 8   for the United States, together with our case agent, Doug Eadie,
 9   with the FBI, and our paralegal, Marcus Bennett.
10              THE COURT:  Good morning, folks.
11              MR. BURNHAM:  Good morning, Your Honor.  Charles
12   Burnham here with Nicholas Rodean.
13              THE COURT:  Good morning, Mr. Burnham.  Good morning,
14   Mr. Rodean.
15          All right.  I have reviewed the testimony, evidence, and
16   arguments of counsel.  I've relied upon the elements of the
17   various offenses as laid out in the government's trial brief,
18   which the defense has not quibbled with.
19          Mindful of the government's burden to prove every element
20   beyond a reasonable doubt, I make the following findings of fact
21   and conclusions of law:
22          First, I think all witnesses testified credibly.  The two
23   law enforcement officers and the Architect of the Capitol
24   employees struck me as careful, trustworthy, and as having full
25   information about the facts to which they testified.
```

1        I thought Mr. Pettit was credible on the whole, although he
2   seemed less candid at points and seemed uncomfortable testifying
3   beyond relatively narrow areas he had been prepared to speak
4   about.  Ultimately, however, his testimony has relatively little
5   weight in my verdict.
6        I turn next to Count 1, the destruction of property charge.
7   Having reviewed the various evidence the government submitted
8   and, in particular, Exhibit 11 very closely, I find the
9   following:
10       Shortly after 2:00 p.m. on January 6, 2021, a group of
11  rioters approached the Senate wing door and began pounding at
12  the doors and windows.  I will focus on the window to the right
13  of the door looking out from the corridor.  At 2:12 p.m., a
14  rioter punched the far right pane, causing it to splinter but
15  not shatter.  He left immediately afterwards.
16       A few seconds later, a second rioter came up and began
17  pounding on that pane, opening up a small hole in it.  As he was
18  pounding, the defendant came up and used the end of his flag
19  pole to clear away shards of glass, increasing the size of the
20  hole.  He then used what I believe was a hard bowl-like object
21  to punch out more of the window, largely clearing the lower half
22  of the pane from any glass.  His actions clearly caused
23  substantial damage to this pane.
24       Meanwhile, another rioter jumped onto the window ledge and
25  began kicking the adjacent window pane.  He cracked it.  Almost

```
 1   immediately after he initially cracked it, the defendant turned
 2   his attention to that second pane, and he began hitting it with
 3   the bowl-like object while the other man continued kicking it.
 4   Together, they pushed a large section of the second pane out so
 5   that it was no longer attached to the frame.
 6        The defendant then clambered through the first window pane.
 7   He was the first person to go through that window, and he was
 8   only able to get through it because of his prior actions of
 9   damaging that window.  As he climbed through, he further damaged
10   the remaining glass.
11        Seconds after he climbed over -- or climbed through the
12   window, other rioters were able to completely clear both panes
13   of glass.  They did this quickly and, in part, because of the
14   damage the defendant had caused to both panes.
15        I find beyond a reasonable doubt that the defendant damaged
16   both window panes so as to fulfill the first element of Count 1.
17   To be sure, other people also damaged both panes, and I think it
18   is likely that both panes would have been replaced based on the
19   damage others had done before the defendant started damaging
20   them.
21        But I don't think that's dispositive.  Before he began
22   damaging them, both windows were still substantially intact, and
23   they remained intact and useful for protection from the elements
24   and to prevent people from entering through them.  The defendant
25   caused substantial additional damage to both panes, rendering
```

1    them much less useful as a means of protecting the Capitol from
2    the elements or intruders.
3        In the alternative, I also find the defendant aided and
4    abetted others in their damage to both panes.  I take
5    Mr. Burnham's point that people who commit similar crimes
6    simultaneously aren't necessarily aiding one another, but here,
7    the rioters had a common purpose to destroy the windows and gain
8    access to the Capitol through them.
9        By working together, the defendant and others accomplished
10   this.  Within about two minutes, both panes went from being
11   completely intact to being completely gone.  The defendant
12   picked up work started seconds ago by other rioters and worked
13   in tandem with fellow rioters to destroy both panes.
14       I think this satisfies the aiding and abetting
15   requirements.  He knew that fellow rioters were committing
16   destruction of property, he knowingly helped them in their
17   efforts to destroy that property, and he did so with the intent
18   that they succeed in destroying the windowpanes.
19       Incidentally, I agree with the government that the
20   defendant took the bowl-like object from one of the other
21   rioters who had been working with him to destroy the right pane,
22   and he continued those efforts.  I think this further solidifies
23   the evidence of cooperation and facilitation.  This happened at
24   approximately 2:12:55 p.m. on Exhibit 11.
25       The next two elements are that the defendant acted

1  willfully and that the property belonged to the United States.
2  There's no question that the government has met both of these
3  elements, and the defense has not argued otherwise.
4        Finally, I think the government has shown beyond a
5  reasonable doubt that the value of the damaged property exceeded
6  $1,000.  I thought Mr. McIntyre's explanation for his
7  calculation of the total cost of replacing the windows, both
8  windows, was amply supported by evidence.  He explained the
9  various costs involved in the glass, painting, testing, and
10 labor.
11       I find the total cost of the damage was $1,548 or more.  I
12 credit Mr. McIntyre's testimony and believe that figure is, if
13 anything, conservative in relation to the total cost of the
14 damage caused by the defendant to the government's property.
15       It's unclear to me if the defendant alone is personally
16 responsible for damage of more than $1,000.  This is primarily
17 because his damage to the left window pane seemed minimal
18 compared to what others did.  While it is likely true that the
19 Architect of the Capitol would have decided to replace that pane
20 based solely on his damage, I can't ignore the fact that someone
21 else had kicked the pane repeatedly before him, which by the
22 same logic also would have required replacement.
23       Ultimately, however, I do not believe this helps the
24 defendant.  First, I find that he attempted to damage property
25 that exceeded the sum of $1,000.  Regardless of whether he

1  actually caused the full damage amount, he attempted to destroy
2  the window and, thus, can be held liable under the clear terms
3  of the statute.  More, he also aided and abetted the damaging of
4  both windowpanes, which as I say resulted in damage exceeding
5  $1,000.  So I find the government has met its burden on the
6  final element of destruction of property.
7         For all these reasons, I find the defendant guilty of Count
8  1.
9         Count 2 charges him with entering or remaining in a
10 restricted building or grounds.  First, I find that the
11 restricted area within the meaning of Section 1752 is the area
12 outlined in Government's Exhibit 1.  Therefore, there is no
13 doubt that the defendant did, in fact, enter into the restricted
14 area.
15        The question is whether he did so knowingly.  I find beyond
16 a reasonable doubt that he did.  By the time the defendant got
17 to the Capitol building itself, he would have gone over or
18 around bike racks and snow fencing.  Having reviewed the video
19 footage of the defendant's progress at the north side of the
20 Upper West Terrace, I find the defendant would have seen the
21 officers erecting make-shift barricades to try to stop the
22 rioters from approaching the building.  All of these things
23 would have put the defendant on notice that he wasn't supposed
24 to be there.  Even if the bike racks had been removed at the
25 site of his initial entry into the restricted area, he had

1    plenty of other indicators along the way.

2        Even putting that all aside, though, the defendant came to
3    the Capitol building itself and found it completely shut.  It
4    had been put into lockdown mode by Inspector Loyd not long
5    before the defendant and the other rioters approached.  So the
6    defendant and the others bashed in windows to gain entry to the
7    Capitol.  I think this also put him on notice that he wasn't
8    allowed to enter the Capitol building.

9        As Mr. Burnham has stated, the Capitol is the people's
10   palace, but the defendant found it completely shut down.  I
11   think this would have put him on notice that it was restricted
12   at that time.

13       More, I do credit the testimony of Inspector Loyd and
14   Officer Morgan that the officers repeatedly told the rioters to
15   leave.  All of this shows his knowledge beyond a reasonable
16   doubt.

17       The defense has argued that officers wanted the rioters to
18   remain in the Ohio clock corridor and that I shouldn't credit
19   their testimony to the contrary.  I disagree.  I believe the
20   officers primarily wanted the rioters to retrace their steps and
21   exit the building.  It is only because the rioters were refusing
22   to leave that the officers preferred them to remain there than
23   for them to enter even deeper into the Capitol building.  So I
24   fully credit the officers' claims they told the rioters,
25   including the defendant, to leave.  I, therefore, disagree with

the defense's interpretation of Inspector Loyd's prior testimony.

I find the defendant guilty of Count 2.

Count 3 is disorderly conduct in a restricted area. I find beyond a reasonable doubt that the defendant engaged in the following disorderly or disruptive conduct: Destroying an exterior Capitol window and climbing into the building through the window; engaging in a standoff with officers right outside the Senate chamber; waving his flag in the Ohio clock corridor; and displaying a hatchet while in the Senate building.

I also find the government has shown he did so with the intent to impede or disrupt the orderly conduct of the government's business or official functions.

I'm not sure if the defendant knew the certification was supposed to be ongoing, but I do think he understood and, in fact, wanted his actions to disrupt orderly government business. I don't know how else to understand his actions, particularly his decision to break into the Capitol itself. I think he was angry about the election, and he wanted to stop the steal, and his actions were a part of an attempt to do that.

I also think the government has shown that he did, in fact, cause a disruption to the orderly conduct of government business. He was, in part, why the Senate needed to be on lockdown just feet from where he was facing off with the police.

For all these reasons, I find the defendant guilty of

1  Count 3.

2  I also find the defendant guilty of Count 4, physical
3  violence against property.  I believe my explanation for the
4  ruling on Count 1 also justifies this finding.

5  Count 5 is disorderly or disruptive conduct in a Capitol
6  building.  I find the government has satisfied the first element
7  of this offense for the same reasons I outlined in Count 3.

8  I also find the defendant acted with the intent to impede,
9  disrupt, or disturb a session of Congress.  He broke into the
10 Capitol building in the middle of the day.  He told people he
11 wanted to stop the steal.  He was with other rioters who were
12 yelling "where are they counting the votes?"  And he faced off
13 with Capitol police officers directly outside the Senate
14 chamber.  All of these things suggest an intent to disrupt
15 Congress.

16 I've considered the defense's arguments regarding the
17 defendant's mental issues.  Ultimately, I don't think there's
18 enough in the record here to undermine the government's evidence
19 of intent.  I imagine the defendant's Asperger's and autism
20 would be relevant factors at sentencing, but it would be pure
21 speculation on my part right now to say that they prevented the
22 defendant from intending to do what all the facts and
23 circumstances in front of me suggest he was trying to do, which
24 is to disrupt Congress.

25 For all these reasons, I find the defendant guilty of

1   Count 5.
2       I also find the defendant guilty of Count 6, physical
3   violence in the Capitol, for the reasons I previously explained
4   in Count 1.
5       Count 7 is parading, demonstrating, or picketing in the
6   Capitol.  I find that the defendant -- or I find the government
7   has proven both elements beyond a reasonable doubt.  Whether or
8   not he picketed, I think his flag waving in the Ohio clock
9   corridor would count as parading, and his involvement in a mob
10  screaming and yelling at officers directly outside the Senate
11  chamber would count as demonstrating.
12      Whether or not he was yelling himself, he broke into the
13  building with them and at least at first moved through the
14  Capitol building with them.  He also told Officer Morgan that he
15  was there to stop the steal.
16      I think all of this shows knowing and willful
17  demonstrating.  I, therefore, find the defendant guilty of Count
18  7.
19      Ms. Cho, do you have any questions about any of my rulings?
20          MS. CHO:  No.  Thank you, Your Honor.
21          THE COURT:  Mr. Burnham?
22          MR. BURNHAM:  No, Your Honor.
23          THE COURT:  All right.  Let's look for a sentencing
24  date.  10:00 a.m. on September 30th, does that work for the
25  government?

1           MS. CHO:  Yes, Your Honor.
2           THE COURT:  And Mr. Burnham?
3           MR. BURNHAM:  Your Honor, I'm scheduled to be in a
4    trial that day.  I think it's highly likely to resolve between
5    now and then.  So I'd feel comfortable scheduling it, but I
6    wanted to at least mention that.
7           THE COURT:  Whichever you prefer.  I'm happy to pick a
8    different date, but if you want to file a motion to continue
9    later, we can do it that way.
10          MR. BURNHAM:  Just out of an abundance of caution,
11   perhaps an October date, if Your Honor has one, the second half
12   of October.
13          THE COURT:  How about 2:00 p.m. on October 21st?  Does
14   that work for the government?
15          MS. CHO:  Yes, Your Honor.
16          THE COURT:  Mr. Burnham?
17          MR. BURNHAM:  That's fine, Your Honor.
18          THE COURT:  We will set the sentencing at 2:00 p.m. on
19   Friday, October 21st.  That will be in person in this courtroom.
20       Mr. Rodean, a pretrial investigation report will be
21   conducted.  Probation will -- I'm sorry, presentence
22   investigation report will be conducted.  The probation officer
23   will speak with you about it.  Your attorney can be present if
24   you wish.
25       You and your attorney will also have an opportunity to

Case 1:21-cr-00057-TNM   Document 62   Filed 09/09/22   Page 13 of 14

179

```
 1    review the report, file any objections to it with the probation
 2    officer and again with me prior to sentencing.  You and any
 3    victims of the offense will also have an opportunity to speak to
 4    me at sentencing if you wish.
 5         Ms. Cho, is the government requesting a change in the
 6    defendant's release conditions?
 7              MS. CHO:  We are not.
 8              THE COURT:  All right.  Anything further from the
 9    government, ma'am?
10              MS. CHO:  No.  Thank you, Your Honor.
11              THE COURT:  Mr. Burnham?
12              MR. BURNHAM:  Thank you, Your Honor.
13              THE COURT:  I will ask for any memoranda in aid of
14    sentencing to be filed by October 14th.
15         Thanks, folks.
16         (Proceedings adjourned at 11:17 a.m.)
```

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Sara A. Wick                         August 7, 2022

SIGNATURE OF COURT REPORTER              DATE