IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No.  1:21cr57** |
| | : | |
| **NICHOLAS RODEAN** | : | |
| | : | |
| **Defendant.** | : | |

**SENTENCING MEMORANDUM**

### I.       Introduction

Nicholas Rodean is before the Court for sentencing following a bench trial for multiple offenses related to his presence at the United States Capitol on January 6, 2021.

We submit that Nicholas' "history and personal characteristics" make this a unique case among the hundreds of prosecutions to come out of that day.  The professional evaluation combined with the outpouring of thoughtful letters will hopefully give the Court insight into the special circumstances of this defendant.  Based on these materials and other § 3553 factors, Mr. Rodean asks the Court to consider imposing a period of home detention with appropriate conditions.

### II.      Law of Sentencing

The law requires this Court to impose a sentence sufficient but no greater than necessary to achieve the goals of sentencing in 18 U.S.C. § 3553.  The sentencing guidelines must be considered but are not binding on the Court.  *United States v. Booker*, 542 U.S. 220 (2005).

### III.   Sentencing Factors

#### a.   Sentencing Guidelines

##### i.   The Cross Reference Does not Apply

Under § 2B2.3(c) (trespassing), the Court is directed to apply a cross reference where "the offense was committed with the intent to commit a felony offense." The presentence report concludes that Mr. Rodean committed his offenses with the intent to commit Obstruction of an Official Proceeding under § 1512.  PSR ¶ 41.  The PSR bases this on a statement from the Court as follows "I also think the Government has shown that he did, in fact, cause a disruption to the orderly conduct of government business."  *Id*.  Based on this conclusion, the PSR applies the obstruction of justice guideline § 2J1.2, which results in a higher final offense level.

But Obstruction of an Official Proceeding requires more than a finding that the offense conduct disrupted government business.  The statute also requires the defendant to have acted "corruptly."  The Court made no such finding and Mr. Rodean submits that the case evidence would support no such finding.  Guideline § 2J1.2(a) therefore does not apply.

##### ii.   Without Applying the Cross Reference, Mr. Rodean is a Level 10

As the PSR states, groups of closely related counts are scored according to the count with the highest offense level.  PSR ¶ 40.  In Mr. Rodean's case that is Count 3 – § 1752(a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds.  It is scored according to guideline § 2A2.4.  That guideline carries a base offense level of 10 and no applicable enhancements.  Mr. Rodean's guidelines would therefore be 10/I or 8-14 months.

### iii. If this Court Does Apply the Obstruction Guideline (§ 2J1.2) – the PSR's Enhancements for Property Damage and Substantial Interference Should Not be Assessed

If this Court disagrees with the above analysis and adopts the PSR's calculation under § 2J1.2, it should decline to apply the enhancements set forth in the PSR and endorsed by the government.

The PSR gives Mr. Rodean an 8-level enhancement for property damage under § 2J1.2(b)(1) and an additional three levels for "substantial interference" under (b)(2).  PSR ¶ 42-43.  However, neither enhancement is implicated unless the conduct interferes with "the administration of justice."  The phrase "administration of justice" refers to judicial proceedings.  *See, e.g., United States v. Richardson*, 676 F.3d 491, 502-502 (5th Cir. 2012)("[O]bstructing the due administration of justice means interfering with the procedure of a judicial hearing or trial.").  The electoral count does not meet this definition so the enhancements do not apply.

This Court adopted this interpretation of the enhancements in *United States v. Hale-Cusanelli*, 21-cr-37-TNM.  Without these enhancements, Mr. Rodean's guidelines are 14/I or 15-21 months.

### b. History and Personal Characteristics



████████████████████████████████████████████████ nd
████████████████████████████████████████████████
████████████████████████████████████████████████

### c. Facts and Circumstances of the Offense

This Court is familiar with the facts of Mr. Rodean's offenses from the trial evidence, so they will not be recounted in detail here.  Mr. Rodean is not alleged to be a member of any violent group or to have acted aggressively towards law enforcement.  On the contrary, law enforcement testimony consistently described him as cooperative.

### d. Avoid Unwarranted Sentencing Disparities

#### i. United States v. Hunter Ehmke

The most comparable case to come before the Court so far may be *United States v. Hunter Ehmke*, 21-cr-29 - TSC.  Mr. Ehmke "smashed a set of windows on the east front of the Capitol Building by kicking and punching them while at the forefront of the mob attacking the Capitol."  ECF 31 at 2 (government sentencing memorandum).  He pled guilty to destruction of property under 18 U.S.C. § 1361.  Mr. Ehmke "was not merely an actor who hung back and followed others…[h]e was an instigator."  *Id*. at 14.  The government's filing alludes to "factors in Ehmke's personal background" but does not elaborate.  *Id*.  The defendant's sentencing memo is heavily redacted.  ECF 30.

Notably, Mr. Ehmke could easily have been charged with 18 U.S.C. § 1512(c), or at least subjected to the § 1512 guidelines via cross references, for "attempt[ing]" to obstruct an official proceeding.  After breaking the capitol window, Mr. Ehmke was prevented from entering the building because police tackled and detained him.  ECF 30 at 5 (defense sentencing

memorandum).  For whatever reason, the government did not choose to argue that Mr. Ehmke had "attempted" to obstruct the electoral count.

### ii.  Other Protest Activity in 2020/21

As the Court will recall, substantial protest activity occurred in the United States throughout 2020 involving participants from across the political spectrum.  Many observers have noted that the January 6th defendants seem to have been prosecuted more harshly than protestors motivated by causes more closely associated with the current Presidential administration such as police reform.  The most comparable cases are the prosecutions (or lack thereof) stemming from left wing riots at the Hatfield Federal Courthouse in Portland Oregon.  Portland's federal courthouse was the focus of intense protest activity in favor of police reform for more than 90 consecutive nights[1] following the death of George Floyd during a police encounter in Minnesota.  In one court filing, the government described the protests as follows:

> [The protests] [w]ere followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. One violent event impacting federal property occurred on May 28, 2020, when the Portland Field Office for the Immigration and Customs Enforcement (ICE) was targeted by a Molotov cocktail. The Mark O Hatfield Courthouse has experienced significant damage to the façade, glass, and building fixtures during the weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized or stolen. The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000. Other federal properties in the area routinely being vandalized include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to assault, threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown rocks, bottles and balloons filled with paint, and vulgar language from demonstrators while performing their duties.

---

[1] https://www.justice.gov/usao-or/pr/74-people-facing-federal-charges-crimes-committed-during-portland-demonstrations

*United States v. Bouchard*, 3:20-mj-165 (D.Ore. July 24, 2020), ECF 1-1 at 4-5.  The protests involved thousands gathering on a nightly basis.  *United States v. Judd*, 2021 WL 6134590, *10 (D.D.C. December 28, 2021).  Despite these enormous numbers, federal prosecutors limited themselves to charges against a few dozen persons, mostly involving property destruction or assaulting law enforcement.[2]  Many of these cases were later dismissed or resolved with extremely favorable plea bargains.[3]  A handful of Portland protesters were charged with lesser offenses.  *See, e.g. United States v. Ian Wolf*, 3:20-cr-286, ECF 1 (D. Ore.)(Information charging Creating a Hazard on Federal Property under 41 C.F.R. § 102.74.380(d) and Failing to Obey a Lawful Order under 41 C.F.R. § 102.74.385).  The overwhelming majority of the persons involved in the Portland protests were not charged with any offenses.

Mr. Rodean adopts the summary of the federal law enforcement response to the Portland riots as presented in *United States v. McCaughey et al*., 1:21-cr-40-TNM.  A particularly useful chart of Portland defendants and the disposition of their cases is attached as exhibit 2.

The extraordinarily lenient treatment afforded to the Portland rioters supports a downward variance for Mr. Rodean to avoid an unwarranted disparity.  This is particularly necessary because the disparity could reasonably be interpreted to have been created by political bias in the Department of Justice, which is particularly odious.

### iii.  Comparable Cases in D.C. Superior Court

Most DC cases involving trespassing or destruction of property are not prosecuted in federal court.  Traditionally, even cases involving large scale political protests are handled

---

[2] *Id.*
[3] https://www.kgw.com/article/news/investigations/portland-protest-cases-dismissed-feds/283-002f01d2-3217-4b12-8725-3fda2cad119f;

locally, such as the prosecutions stemming from the 2017 Presidential Inauguration.  How would

Mr. Rodean have faired had he been prosecuted in the local court?



     A downward variance would be warranted to correct the disparity between Mr. Rodean's

current situation and similarly situated persons prosecuted in D.C. Superior Court.

     **e.   General Deterrence**

     As has been widely reported, over 800 people have been prosecuted for their roles in

January 6.  Their sentences have ranged from probation to years in prison.  Their cases have been

widely reported in the media, as have judges' comments about the seriousness of the cases.  Such

a large lumber of related cases gives this Court more flexibility to show measured leniency in

cases with significant mitigation without sacrificing much in the way of general deterrence.

     **f.   Specific Deterrence**

     The materials submitted in connection with this filing have hopefully made clear that

specific deterrence need not be a heavy concern in this case.

███████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

    █████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

    ████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

████████████

**g.   A Prison Sentence Would Be Unnecessarily Punitive in this Case**

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



## IV.    Conclusion

For the foregoing reasons, Mr. Rodean requests a sentence home incarceration for an appropriate period of time.

Respectfully submitted,
By: */s/ Charles Burnham*
Charles Burnham
D. Md. Bar 12511
*Attorney for Defendant*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
charles@burnhamgorokhov.com

'

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this filing has been served on opposing counsel by email.

By: */s/ Charles Burnham*
Charles Burnham
D. Md. Bar 12511
*Attorney for Defendant*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
Charles@burnhamgorokhov.com